921 F.2d 50
 John W. DENNISON, Plaintiff-Appellant,
v.
COUNTY OF FREDERICK, VIRGINIA; Kenneth Y. Stiles,
individually and in his capacity as Chairman of the
Frederick County Board of Supervisors; John R. Riley,
individually and in his capacity as County Administrator of
Frederick County, Virginia, Defendants-Appellees.
 No. 90-1723.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 30, 1990.
Decided Dec. 19, 1990.
 
 Thomas A. Schultz, Jr., Harrison & Johnston, Winchester, Va., for plaintiff-appellant.
 Scott Sanford Cairns, argued (William E. Twomey, Jr., McGuire, Woods, Battle & Boothe, Richmond, Va., on brief), for defendants-appellees.
 Before CHAPMAN and WILKINS, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Plaintiff-appellant John Dennison ("Dennison") sued defendant-appellee County of Frederick (the "County") under 42 U.S.C. Sec. 1983 (1988), alleging constructive discharge in violation of Dennison's first and fourteenth amendment rights. The district court granted the County's motion for summary judgment on the basis of collateral estoppel. Although we question the appropriateness of the district court's collateral estoppel ruling, we affirm on alternate grounds raised in this appeal.
 
 I.
 
 2
 Dennison, originally employed by the County in 1977 as a building inspector, was a Building Official for the County from 1981 to 1986. As Building Official, Dennison was responsible for enforcing the Virginia statewide building code. Dennison claims that he was constructively discharged as a result of a series of conflicts he had with the Chairman of the Board of Supervisors Kenneth Stiles ("Stiles") and County Administrator John Riley ("Riley"). Dennison contends that both men "urged" him to relax his strict enforcement of the building code by questioning his judgment and by limiting his authority. Specifically, Dennison claims that Riley required him to substantiate his building code decisions by going out to the job sites. Further, Dennison's department was reorganized so that he could "no longer directly tell the secretaries in the department what to do, but instead had to go through a 'floor coordinator' who was not a member of his department." After Dennison resigned, however, the reorganization plans were abandoned. Finally, Dennison claims that every complaint filed against him was determined to be unfounded.
 
 
 3
 On September 30, 1986, Riley met with Dennison for an unscheduled performance review, and Riley told Dennison that he needed to make certain improvements in his performance before his next formal evaluation. At this time, Dennison was told that his salary, benefits and working conditions would not be affected, but that he would be placed on probation for six months. Dennison responded by orally resigning. After consulting with an attorney, Dennison submitted his written resignation ten days later. Approximately a month later, Dennison filed a grievance with the County Administrator alleging that his resignation had been involuntary.
 
 
 4
 As an employee of the County, Dennison was subject to the Manual for the Employees of the County of Frederick, Virginia (the "Manual"). The Manual outlines the rights and obligations of County employees, and in particular establishes a grievance procedure whereby employees can obtain review of allegedly unjust employment decisions made by the County.
 
 
 5
 Section 12.1(A) of the Manual sets out the complaints or disputes relating to employment that are grievable, specifically including "(i) disciplinary actions, including dismissals (whether resulting from formal discipline or unsatisfactory job performance or an involuntary resignation)." The County Administrator determines whether the alleged wrongful conduct is grievable under this section of the manual. If the County Administrator determines that the complaint is grievable, the complaint proceeds to the final step in the grievance process which is a full panel hearing. The panel comprises "one member appointed by the grievant, one member appointed by the agency head and a third member selected by the first two." Va.Code Sec. 2.1-114.5:1(D)(4).
 
 
 6
 If the County Administrator determines that the alleged wrongful conduct is not grievable, the employee may appeal to the State Circuit Court for a de novo hearing on the issue of grievability. Va.Code Sec. 2.1-114.5:1(E). If the Circuit Court reverses the County Administrator's decision, the employee receives a full panel hearing. If the Circuit Court affirms the prior decision, however, the complaint is dismissed without a panel hearing. In either case, the Circuit Court's decision is final and not appealable. Id.
 
 
 7
 Since the County Administrator, John Riley, was a participant in the events leading up to Dennison's resignation, he appointed a third party, James Longerbeam, a member of the County's Employee Relations Committee, to conduct an investigation and render a decision on the grievability issue. After eleven days of hearings, Longerbeam issued a written decision which concluded that Dennison was not forced to resign, and therefore, Dennison's claim was not grievable. On March 2, 1988, Riley issued a determination adopting Longerbeam's findings. On March 7, 1988, Dennison appealed Riley's decision to the Circuit Court for the County of Frederick.
 
 
 8
 On November 18, 1989, Virginia Circuit Judge James L. Berry issued a final order specifically finding that
 
 
 9
 Dennison had not established a probability that the County intended to cause his resignation, or that the circumstances of his employment were intolerable. Therefore Mr. Dennison has not established the elements of constructive discharge or involuntary resignation.
 
 
 10
 Thus, the court found that his resignation was not grievable and dismissed the case.
 
 
 11
 On September 29, 1988, over a year before the state court case was dismissed, Dennison filed this case in federal court. Although the County filed a motion for summary judgment, the district court delayed its ruling pending final order in the state action. After the state proceeding established that Dennison was not involuntarily dismissed, the district court found that collateral estoppel barred re-litigation of the involuntary dismissal issue, and granted summary judgment to the County, because involuntariness of the discharge was an essential element to Dennison's 1983 claim. 726 F.Supp. 137.
 
 II.
 
 12
 Although the County briefed several issues in its motion for summary judgment, the district court granted the County's motion solely on the basis of collateral estoppel. We are concerned that the decision of the state court may not have been the type of final decision required to support collateral estoppel and the district court may have misapplied this doctrine. We will bypass this issue and leave it for another day, because we may affirm a grant of summary judgment on any ground raised by the parties in the district court. See Sine v. Local No. 992, Int'l Bhd. of Teamsters, 730 F.2d 964, 966 (4th Cir.1984); accord 10 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2716 (1983). In this case, we find there is an alternate basis for summary judgment and we affirm because appellant has not shown a violation of a constitutionally protected right.
 
 III.
 
 13
 To assert a claim under 42 U.S.C. Sec. 1983, a plaintiff must establish a deprivation of a constitutionally protected right under the color of state law. In this case, Dennison claims a violation of his first amendment right to freedom of speech, and his fourteenth amendment right to due process of law.
 
 A.
 
 14
 A state or division of a state may not discharge an employee for a reason that infringes that employee's constitutionally protected right to freedom of speech. Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). To prove that a discharge violates this constitutional protection, an employee must identify the constitutionally protected speech that caused the discharge. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983); Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284-85, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977); Jurgensen v. Fairfax County, 745 F.2d 868, 881 (4th Cir.1984). Inherent in this requirement is a two-part test: first, that speech or at least expressive conduct be involved and, second, that the speech be protected under the first amendment. We hold that Dennison has failed to satisfy either of these requirements. Therefore, even if there was a discharge, it did not violate Dennison's first amendment right of freedom of speech.
 
 
 15
 In its brief, the County argues that Dennison failed to identify any speech that was the basis for his discharge. When the County asked Dennison in his deposition to specify the particular "speech" for which he was fired, Dennison could not do so, and when pressed, was told by his lawyer not to answer the question. In response to interrogatories, Dennison's lawyer only alleged that Dennison was discharged for his strict enforcement of the building code. Dennison repeats this position in his reply brief, and to date he has never specified any particular speech for which he was punished, but he has relied on general allegations that he was being punished for a general course of conduct.
 
 
 16
 Although "speech" does not have to be spoken to be protected under the first amendment, see, e.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning is protected "speech" under the first amendment), the Supreme Court has repeatedly rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). At most, the present case involves a dispute over a general course of conduct, not the expression of any idea or opinion. Dennison never evinced an "intent to convey a particularized message...." Spence v. Washington, 418 U.S. 405, 410-11, 94 S.Ct. 2727, 2730-31, 41 L.Ed.2d 842 (1974). Since Dennison cannot identify any particular speech, symbolic or otherwise, for which he was punished, we hold that, as a matter of law, his first amendment right to freedom of speech could not have been violated.
 
 
 17
 Furthermore, even if Dennison's overall course of conduct could be construed as "speech" we hold that his speech would not be protected under the first amendment. Although the Supreme Court has not fashioned a rigid test of what speech is protected, the Court has historically balanced "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987) (quoting Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); accord Connick, 461 U.S. at 140, 103 S.Ct. at 1686; Mt. Healthy, 429 U.S. at 284, 97 S.Ct. at 574. Accordingly, this court has adopted a two-part test to evaluate whether the speech is constitutionally protected: "(1) whether the speech qualified as a matter of public concern and (2) what effect the speech has on the efficiency, discipline and proper administration of the workplace." Dwyer v. Smith, 867 F.2d 184, 193 (4th Cir.1989).
 
 
 18
 Since Dennison has failed to identify any particular speech, it is admittedly difficult to determine whether his speech is protected. Nevertheless, accepting Dennison's allegation that his general course of code enforcement was speech for which he was fired, we hold that it was not protected. We first question whether Dennison's course of conduct qualifies as a matter of public concern. Although the safety of public buildings could be considered important to public welfare, Dennison never complained to his supervisor that the office policies regarding the building code were unsafe. Moreover, Dennison could not identify any specific conduct by his supervisor which resulted in an unsafe or unlawful enforcement of the building code. At most, Dennison complains of "urgings" by his supervisor for a less strict enforcement of the code, as manifested by requiring Dennison to visit the job sites to confirm his decisions and by reorganizing the secretarial pool working for Dennison.
 
 
 19
 The Supreme Court has repeatedly recognized that the category of "matters of public concern" does not involve every bureaucratic complaint:
 
 
 20
 To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case.... The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.
 
 
 21
 Connick, 461 U.S. at 149, 103 S.Ct. at 1691. Accordingly, personal grievances about working conditions do not qualify as matters of public concern. See Lewis v. Blackburn, 759 F.2d 1171 (4th Cir.) (en banc) (magistrate who was not reappointed because she "protested" her workload did not state a constitutional claim), cert. denied, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985). Although Dennison's allegations appear to be of public interest, when they are considered in the context of what actually occurred with the office reorganization and his probation, they are "more properly viewed as essentially a 'private' matter between employer and employee." Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986).
 
 
 22
 Since we hold that Dennison's speech did not involve a matter of public concern, the speech cannot be protected under the first amendment. Therefore, we do not address the second part of the test involving the effect of the speech on the administration of the workplace.
 
 B.
 
 23
 Dennison also argues that since he was constructively discharged, his fourteenth amendment rights were violated as well. To establish such a claim, Dennison must prove that he was in fact constructively discharged and that the County failed to provide adequate procedural due process as required by the fourteenth amendment. The County makes a strong case against Dennison's claim that he was constructively discharged, but we need not resolve this factual dispute when it is clear that the County's procedures more than satisfy the due process requirements of the fourteenth amendment.
 
 
 24
 Dennison alleges a lack of due process in the initial review meeting with his supervisor when he was advised of his probation. At this meeting, however, Dennison resigned without responding to the charges about his poor performance. Assuming that Dennison was constructively discharged, this meeting operated as a pre-termination hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (pre-termination hearing need not be elaborate and must simply provide the employee with notice of the charges against him and an opportunity to respond). Accordingly this meeting satisfied the initial requirements of due process prior to discharge. See Buschi v. Kirven, 775 F.2d 1240 (4th Cir.1985) (telephone call offering employee opportunity to discuss discharge satisfied pre-termination hearing requirements and, therefore, complied with due process).
 
 
 25
 This court has held that the grievance procedure established in the Virginia Code provides sufficient post deprivation remedies. See Detweiler v. Virginia Dept. of Rehabilitative Servs., 705 F.2d 557 (4th Cir.1983). Dennison spurned this procedure in favor of resignation. Even though he had resigned, Dennison was still permitted to invoke the grievance procedure, and he received an eleven-day administrative hearing in which he was represented by counsel and could call witnesses as well as cross-examine adverse witnesses. Accordingly, we hold that even assuming that Dennison was constructively discharged, he received all of the procedural due process to which he was entitled under the fourteenth amendment.
 
 IV.
 
 26
 For the above reasons, the district court's decision to grant summary judgment to the County is
 
 
 27
 AFFIRMED.