**Robert W. ROPER, Plaintiff,**

v.

**COUNTY OF CHESTERFIELD, VIRGINIA et al., Defendants.**

**C.A. No. 92–CV–610.**

United States District Court, E.D. Virginia, Richmond Division.

Dec. 2, 1992.

Blackwell Nixon Shelley, Jr., Manning, Davis & Kirby, Richmond, VA, for plaintiff.

Steven Latham Micas, Jeffrey Lee Mincks, Chesterfield County, Chesterfield, VA, for defendants County of Chesterfield, Lane Ramsey, County Administrator, County of Chesterfield.

James Alexander Baber, III, Dennis William Dohnal, Bremner, Baber & Janus, Richmond, VA, for defendant Acors & Griffith Heating and Air Conditioning, Inc.

Deborah Shae O'Toole, Frank Fletcher Rennie, IV, Cowan & Owen, Archibald Wallace, III, Sands, Anderson, Marks & Miller, Richmond, VA, for defendant Barnett's Heating & Air Conditioning, Inc.

Edward Ernest Nicholas, III, Thomas Nelson Langhorne, III, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, for defendant Daniel's Heating & Refrigeration Corp.

Scott Sanford Cairns, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendant W.G. Speeks, Inc.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the following motions:

1) The Plaintiff's Motion for Leave to Amend his Complaint, pursuant to Fed.R.Civ.Proc. 15(a);

2) Motions to Dismiss, either pursuant to Fed.R.Civ.Proc. 12(b)(1) or (6), by all of the Defendants except Acors & Griffith Heating and Air Conditioning, Inc. ("Acors"); and

3) Defendant Acors' Motion for Summary Judgment, pursuant to Fed. R.Civ.Proc. 56(b).

For the reasons set forth below, the Court grants the motion to amend, dismisses all defendants except the County of Chesterfield ("the County") from Count I, dismiss-

es Count III in its entirety, and denies the remaining aspects of the motions to dismiss, while asserting supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claim asserted in Count V.

## I. *Factual Background*

The plaintiff, Robert W. Roper ("Roper"), was formerly a Senior Mechanical Inspector employed by the Chesterfield County Department of Building Inspection. His duties required him to perform on-site inspections of dwellings to ensure that the contractors constructing those dwellings adhered to the statewide building code requirements for heating, ventilating and air conditioning systems. Roper's Complaint and Amended Complaint allege the following:

During the summer of 1990, representatives from four contracting companies—Acors, Barnett's Heating & Air Conditioning, Inc. ("Barnett's"), Daniel's Heating & Refrigeration Corporation ("Daniel's") and W.G. Speeks, Incorporated ("Speeks") (collectively referred to as the "Contractor Defendants")—met with Roper's superior, Robert S. Hodder ("Hodder"), to complain that Roper was "nitpicking" and refusing to pass their work. During the course of these meetings, the Contractor Defendants told Hodder to either direct Roper to rubber stamp their work or to terminate his employment. On or about July 26, 1990, Hodder met with the members of the Mechanical Inspection Staff, including Roper, at which time Hodder directed the staff that the work of certain contractors was not to be rejected. In response to a question from Roper, Hodder confirmed that the "certain contractors" were Acors, Barnett's, Daniel's and Speeks. Roper indicated to Hodder that he would not pass substandard work, regardless of the contractor.

Roper was terminated as an employee of the County on September 24, 1990. Roper alleges that he was dismissed because of his refusal to pass, without challenge, the work performed by the Contractor Defen-

dants. At the time of his termination, Roper was informed by the County that his termination was undertaken pursuant to Policy 200.15—Reductions in Force, of Chesterfield County's Administrative Procedures, which provides that employees separated as a result of a reduction in force "will be given priority consideration for rehiring or for other vacancies within the County Government...."

Shortly after his termination, Roper contacted the Chesterfield County Police Department and reported his suspicion that Hodder was accepting improper gifts from the Contractor Defendants. Subsequent to reporting these suspicions to the police, Roper allegedly was told by Lane Ramsey ("Ramsey"), Chesterfield County Administrator, that Roper had cost Hodder his job and that Roper would never work in the County again. Since his termination, Roper contends that he has submitted to the County numerous applications for employment but has received no consideration for employment from the County, priority or otherwise.

## II. *Motion to Amend*

■ Fed.R.Civ.Proc. 15(a) dictates that leave to amend should be "freely granted when justice so requires." Leave to amend is granted liberally, *Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir.1964), and to justify a denial of such leave, it must appear to the Court that the amendment is futile, offered in bad faith, prejudicial or otherwise contrary to the interests of justice. *Ward Elec. Serv., Inc. v. First Com. Bank*, 819 F.2d 496, 497 (4th Cir.1987). Finding no reason to deny such leave to Roper, the Court accepts his Amended Complaint, and measures the defendants' motions to dismiss against the allegations as set forth in the Amended Complaint.

## III. *Motions to Dismiss and Summary Judgment* [1]

A. Count I

In Count I, Roper alleges that he was instructed by Hodder not to reject any me-

---

1. Acors' Motion for Summary Judgment is predicated on the exact same legal theories as the other defendants' Motions to Dismiss. Acors simply appears to have answered instead of filing a 12(b)(6) motion and then adopted the other parties' arguments by way of summary judgment.

chanical work performed by the Contractor Defendants, in response to which Roper indicated that he would not pass any substandard work. Roper claims that his "activities and speech with regard to passing or rejecting mechanical work performed by Acors, Barnett's, Daniel's or Speeks" were protected by the First Amendment and, thus, that the defendants violated 42 U.S.C. § 1983 by abridging this speech and activity.

■ In order to assert a colorable claim under 42 U.S.C. § 1983, a plaintiff must establish the deprivation of some constitutionally protected right. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Dennison v. County of Frederick,* 921 F.2d 50, 53 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1991). Specifically, to state a claim under the First Amendment, the plaintiff must first identify some speech or expressive conduct that implicates the First Amendment, and second demonstrate that this speech merits constitutional protection. *Dennison,* 921 F.2d at 53.

1. *Plaintiff has identified the requisite speech or expressive conduct from which to assert a viable First Amendment violation*

■ To survive the defendants' motion to dismiss Count I, Roper must distinguish his case from *Dennison* which, at first blush, appears to be factually analogous to his claim. In *Dennison,* the Fourth Circuit held that no First Amendment right was violated where the plaintiff, a former county building inspector, was placed on probation, and allegedly constructively discharged, for his failure to respond to his employer's urging to relax his strict enforcement of the applicable building code. 921 F.2d at 53–54. Plaintiff Dennison contended that county officials "urged" him to relax his strict enforcement of the building code by questioning his judgment and limiting his authority. *Id.* at 51. Furthermore, Dennison alleged that his department was reorganized so that he could "no longer directly tell the secretaries in the department what to do, but instead had to go through a 'floor coordinator' who was not a member of his department." *Id.* The Fourth Circuit characterized Dennison's activities merely as "a course of conduct" devoid of intent to convey a particularized message. *Id.* at 53. The defendants contend that Roper's course of conduct in "nit-picking" (Amended Complaint at paras. 14 and 18) or strictly enforcing the building code does not, under *Dennison,* constitute speech, and therefore, that Roper's First Amendment rights cannot have been violated since, as a matter of law, they were never implicated.

But while *Dennison* and the case at bar both involve disputes between a county official and a building inspector over proper enforcement of the relevant building code, Roper's most crucial allegations distinguish his claim from that which was dismissed by the *Dennison* Court. The factors that the Fourth Circuit relied upon in *Dennison* to arrive at the conclusion that the plaintiff's actions constituted a mere "course of conduct," and not protected speech, illustrate that Roper's claim is importantly different from that which was dismissed in *Dennison.*

The *Dennison* Court simply could not identify the particular speech for which Dennison was claiming First Amendment protection, despite making vigorous inquiry:

When the County asked Dennison in his deposition to specify the particular 'speech' for which he was fired, Dennison could not do so, and when pressed, was told by his lawyer not to answer the question. In response to interrogatories, Dennison's lawyer only alleged that Dennison was discharged for his strict enforcement of the building code. Dennison repeats this position in his reply brief, and to date he has never specified any particular speech for which he was punished ...

921 F.2d at 53. The Court thereafter refers to Dennison's allegations as "a dispute over a general course of conduct, not the expression of any idea or opinion." *Id.* at 54. Dennison's claim, in essence, was that he was fired for adhering to a stricter interpretation of the building code than his

supervisors. The Fourth Circuit held that this claim did not implicate the First Amendment because no protectable speech laid at its root.

Roper's claim is fundamentally different. He alleges not some general dispute with his supervisors over overall building code enforcement, but rather that his refusal to approve without question the work of the Contractor Defendants at Hodder's behest prompted his termination. The speech or expressive conduct at issue in Roper's case is his refusal to pass the Contractor Defendants' substandard work despite his supervisor's alleged direction to do so. This is not a "general course of conduct," but a specific response to an alleged order issued by Roper's supervisor to ignore building codes enacted to protect public safety.

The issue is a close one, and the Court is fully prepared to revisit the validity of Count One at the summary judgment phase of this litigation. The Court is of the belief, however, at this juncture, that Roper's allegations are sufficiently distinguishable from those made by the plaintiff in *Dennison* to survive a Rule 12(b)(6) motion.

2. *The speech identified by the plaintiff is a matter of public concern and is therefore protected by the First Amendment*

■ Recognizing that public employers must be free to make efficient personnel decisions, courts have held that not all employee speech is entitled to First Amendment protection. *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983); *Dennison*, 921 F.2d at 54. In *Dennison*, the Court employed a two-part test to determine whether a public employee's speech was entitled to constitutional protection: "(1) whether the speech qualified as a matter of public concern and (2) what effect the speech has on the efficiency, discipline and proper administration of the workplace." *Id.*, citing, *Dwyer v. Smith*, 867 F.2d 184, 193 (4th Cir.1989).[2] The public concern determination is a question of law to be decided by the Court.

*Connick*, 461 U.S. at 147 n. 7, 103 S.Ct. at 1690 n. 7.

■ In *Dennison*, the Fourth Circuit characterized the employee-employer dispute over strict or lenient enforcement of a building code essentially as a private matter between employer and employee. 921 F.2d at 54. The defendants allege, on the strength of *Dennison*, that Roper's "speech" similarly does not qualify as a matter of public concern. *Dennison*, however, does not appear to support this argument.

The *Dennison* Court acknowledged that "the safety of public buildings could be considered important to public welfare," but found that Dennison's speech was not a matter of public concern because Dennison never complained that office policies regarding the building code were unsafe and because *"Dennison could not identify any specific conduct by his supervisor which resulted in an unsafe or unlawful enforcement of the building code." Id.* (emphasis added). Roper, however, identifies in his Amended Complaint the specific conduct that Dennison apparently could not. Roper's lawsuit is not premised on his discontent with office procedures or some series of conflicts with supervisors over the appropriate amount of strictness or leniency to be used in inspecting buildings. Roper specifically alleges that he was told to ignore the building code when it came to the Contractor Defendants. If followed, such directions clearly would result in "an unsafe or unlawful enforcement of the building code," as required by *Dennison*. The speech and/or expressive conduct alleged to be at issue in this case is a matter of public concern and, as such, is entitled to constitutional protection.

3. *The Contractor Defendants are Improperly Named in Count I*

■ While Count I will not be dismissed from the lawsuit, it will continue only against the County; the Contractor Defendants will be dismissed from this Count.

**2.** The second prong of this test has not been seriously disputed by any of the defendants. All of the debate revolves around whether the speech or expressive conduct at issue qualifies as a matter of public concern.

The plaintiff's argument that the Contractor Defendants could somehow direct the firing of Roper while being cloaked with the color of state law is simply untenable. It is the County, and not any of the Contractor Defendants, which allegedly discharged Roper in violation of his constitutional rights. It is also the County's officials who allegedly ordered Roper to turn the other cheek to building code violations when they were perpetrated by the Contractor Defendants. Perhaps the Contractor Defendants exerted some form of improper pressure on the County which prompted the alleged instructions to ignore the building code, but even under that scenario, the truly culpable party under Count I would be the County for caving into such pressure. If the Contractor Defendants really did anything more than aggressively lobby for their cause, as would most contractors in their position, such improprieties would be fully fleshed out on Roper's state law cause of action against them for tortious interference with his employment contract. It is apparent to the Court that the essence of Count I is directed against the County; therefore, it is dismissed as to the Contractor Defendants.

## B. Count II

Roper has alleged in Count II that, in retaliation for Roper's reporting his suspicions about Hodder to the police, Ramsey, or the County, through its employees, have prevented Roper from being considered for re-employment with the County, despite the County's stated policy of offering "priority consideration" to employees, like Roper, severed as a result of a layoff, and despite Roper's numerous attempts to secure re-employment. Ramsey and the County move to dismiss Count II solely on the basis that it fails to allege that the rights guaranteed Roper by the First Amendment apply to Ramsey and the County by operation of the Fourteenth Amendment. Roper's Amended Complaint cures this defect by specifically alleging in Count II a violation of the First *and* Fourteenth Amendments. Thus, having granted Roper leave

to amend, Count II is not subject to dismissal.

## C. Count III

Count III alleges that the County and the Contractor Defendants conspired to impede, hinder, obstruct or defeat the due course of justice in Virginia, "with the intent to injure Roper or his property for lawfully enforcing, or attempting to enforce, the right of any person to equal protection of the laws." Roper alleges that this conspiracy violates 42 U.S.C. § 1985(2).

The second clause of Section 1985(2), the clause upon which Roper relies, grants litigants the right to sue where:

> two or more persons conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). In order to state a valid claim under this clause,[3] a litigant must demonstrate some interference with "the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 725–26, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Since the plaintiff has not met this requirement, and because his claim is of a nature that cannot be cured by amendment, this Count is dismissed.

1. *Section 1985(2) requires interference with state court proceedings*

Virtually all courts have held that the second clause of Section 1985(2) applies to "conspiracies to obstruct the course of justice in *state courts*" or, more specifically, joint efforts to prevent equal access to state judicial proceedings. *Kush v. Rutledge*, 460 U.S. at 725, 103 S.Ct. at 1487 (emphasis added). *See also Lewis v. Green*, 629 F.Supp. 546, 550 (D.D.C.1986);

---

**3.** The first clause of Section 1985(2) is inapplicable because it applies only to access in the federal courts.

*Britt v. Suckle,* 453 F.Supp. 987, 992 n. 8 (E.D.Tex.1978).

The only case which appears to suggest a somewhat more expansive reading of Section 1985(2)'s "due course of justice" language, and the only case upon which plaintiff relies to counteract *Kush* and its progeny, is *Fowler v. Dept. of Educ.,* 472 F.Supp. 121 (E.D.Va.1978). In *Fowler,* the Court considered a claim against two officials in the Virginia Department of Education for obstructing administrative proceedings being held by the Virginia Department of Personnel. In holding that the Section 1985(2) claim was fatally deficient because a conspiracy could not exist where officials of the same public body act within the scope of their employment, the Court noted that the "language of § 1985(2) *may be* sufficiently broad to encompass conspiracies to obstruct discrimination proceedings in the Virginia Department of Personnel." 472 F.Supp. at 122.

This nebulous dictum is too weak to save Roper's dubious claim for relief under Section 1985(2). First, *Fowler* was decided five years before the Supreme Court's *Kush* opinion, which set forth a far more definitive and detailed framework for analyzing claims advanced under Section 1985(2). Roper has not cited a single case which departed from *Kush*'s command to validate only those Section 1985(2) claims which sought to rectify some denial of equal access to state judicial proceedings. Second, even if Section 1985(2) is read as expansively as Roper suggests, Roper's claim remains an unjustifiably broad expansion even of *Fowler.* In *Fowler,* an aggrieved plaintiff pursued her grievance in an administrative forum and alleged that the defendants attempted to interfere with her right to access to that forum by trying to obstruct the discrimination hearings. Even if read as authoritative, *Fowler* merely extends the scope of Section 1985(2) protection to both state judicial *and administrative* proceedings. Roper seems to argue that because aggrieved individuals may appeal adverse inspection decisions, and because he makes those inspection decisions, he satisfies the *Fowler* interpretation of Section 1985(2). Not only is this a stretch at best, but misses the point of Section 1985(2) jurisprudence. Even under Roper's theory of the case, he has not been denied access to any state or administrative proceeding. Roper cannot render his claim valid by piggybacking on top of unidentified individuals who might potentially appeal adverse inspection rulings. Roper himself must be aggrieved in the manner outlined by *Kush* and its progeny to assert a colorable Section 1985(2) claim. He has failed to do so.

### 2. Section 1985(2) requires some violation of equal protection interests

The Court need not address the defendants' allegations that Roper inadequately asserts a violation of "equal protection of the laws" in Count III. Since Roper's Amended Complaint does not allege interference with state judicial (or administrative) proceedings, Count III does not set forth a valid claim for relief under Section 1985(2), regardless of whether a showing of "class-based, invidiously discriminatory animus" is required in this case. *See Kush,* 460 U.S. at 725–26, 103 S.Ct. at 1487.

### D. Count IV

This Count requests punitive damages against the Contractor Defendants. Since the Court does not dismiss Count V, it allows the punitive damages claim asserted in Count IV to remain as well.

### E. Count V

■ No defendant argues that this Count should be dismissed on the merits. All simply assert that, on the basis of *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Court should decline to assert supplemental jurisdiction over this claim once it dismisses the two federal causes of action asserted by Roper against the Contractor Defendants (Counts I and III). But since the Court retains at least a portion of Count I, it will assert jurisdiction over the pendent state law claim because Counts I and V are sufficiently related that they form part of the same case or controversy. Count V alleges, in essence, that the Contractor Defendants unlawfully interfered

with Roper's employment relationship with the County in a manner which resulted in Roper's eventual dismissal. Thus, the circumstances surrounding Roper's dismissal will be directly at issue in both Counts I and V; judicial efficacy is served by retaining the entire matter and not having it litigated piecemeal in separate fora.