**MARIETTA RADIO PROPERTIES, INC., Appellant,**

v.

**TSCHUDY COMMUNICATIONS CORP., Appellee.**

Civ. A. No. 95–00052–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

June 16, 1995.

Dale Alan Davenport, Hoover, Hoover, Penrod & Davenport, Harrisonburg, VA, for appellant.

David W. Earman, Harrisonburg, VA, for appellee.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes to this court on appeal from an order of the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division, Judge Ross H. Krumm, granting appellee's motion for summary judgment. For the reasons discussed below, this court vacates the grant of summary judgment and remands for trial.

Appellee, Tschudy Communications Corp. (Seller), is a Virginia corporation having filed a petition under Chapter 11 of the Bankruptcy Code. Appellant, Marietta Radio Properties, Inc. (Buyer), is a Delaware Corporation and is the assignee of the original buyer's rights and interests under the contract at issue.[1]

On March 23, 1994, Seller and Buyer executed an Asset Purchase Agreement (the "Agreement") for the sale of a radio station, WEYQ. Because the asset was a radio station, several regulations of the Federal Communications Commission (FCC) governed the acquisition. First, FCC regulations require that parties transferring certain broadcast licenses obtain final consent of the FCC before the transfer becomes effective. Second,

---

1. For clarity, this court will refer to both Marietta entities as "Buyer."

FCC regulations prohibit a single entity from controlling more than a specified percentage of a market's airwaves (the "duopoly rule"). The purchase at issue in this case implicated these FCC regulations.

The Agreement recites several provisions which govern the timing of certain contractual obligations. First, section 11.1 provides as follows:

**Closing Date.** The Closing on this Agreement shall be held within ten (10) business days from the latter of: (i) the date upon which the order of the FCC approving the assignment of the Licenses for the Station from Seller to Buyer has become final (i.e., no action, request for stay, petition for rehearing or reconsideration, or appeal is pending and the time for filing such request, petition or appeal has expired) or (ii) the date of Court Order granting the transfer of Assets provided herein or at such other time as is mutually agreeable.... Notwithstanding the foregoing, Buyer shall have the right to require Closing before the FCC Order is final, provided that no part of the Purchase Price shall be held in escrow. *If a Closing does not occur within Two Hundred Seventy (270) days from the date hereof through no fault or action of either party, then either party may terminate this Agreement by written notice to the other party and the Buyer's Earnest Money Deposit shall be returned to Buyer.* (emphasis added).

The parties appear to agree that this 270–day period expired on December 18, 1994.

Second, section 9.4 provides as follows:

**Time for FCC Consent.** *If approval of the transfer of the Licenses has not become final (all protests having been decided or dismissed, or barred by the expiration of time) within Two Hundred Seventy (270) days from the date of filing the application for assignment with the FCC, either Seller or Buyer, if not then in default, may terminate this Agreement by giving written notice to the other party.* Upon such termination, neither party shall have any right or liability hereunder and the Earnest Money Deposit shall be returned to Buyer. Buyer may elect, however, at its sole risk to consummate the transactions contemplated by this Agreement under a FCC approval which has not become final as herein provided. (emphasis added).

At the time the parties executed the Agreement, there was a pending Equal Employee Opportunity Commission (EEOC) investigation into alleged religious discrimination by the Seller. A former employee of the Seller had alleged that the Seller had dismissed the employee because the employee was not a Christian. Because of this pending EEOC investigation, section 9.1 of the Agreement provides as follows:

**Filing and Prosecution of Application.** Buyer and Seller shall, within the latter of (i) fifteen (15) days from the date of this Agreement, or (ii) five (5) days from the resolution of the [EEOC matter,] join in applications to be filed with the FCC requesting its written consent to the assignment of Licenses of the Station from Seller to Buyer. Buyer and Seller shall proceed with due diligence and promptly take all steps necessary to the expeditious prosecution of such applications to a favorable conclusion, using their best efforts throughout.

On April 22, 1994, the bankruptcy court approved the sale of the radio station and approved a proposed settlement of the EEOC claim. Between May 3, 1994 and June 7, 1994, there was a series of communications between the Seller's attorney and the former employee's attorney concerning the EEOC settlement. On June 10, 1994, the Seller's attorney made a formal demand upon the Buyer to file its application with the FCC. On June 17, 1995, the EEOC formally dismissed the pending complaint.

Sometime between March 23, 1994 and April 22, 1994, the Buyer conducted an engineering study to determine whether its purchase of the radio station would violate the FCC's duopoly rule. The study concluded that the purchase would violate the rule. Consequently, the Buyer created a corporate entity and assigned its rights under the Agreement to the new entity. The Buyer and the Seller executed an "Acknowledgment of Assignment and Waiver of Default", in which the Seller consented to the assignment

of the Buyer's rights to the new entity and waived any default of the Buyer in failing to file and prosecute the FCC consent application. On July 21, 1994, the Buyer filed the FCC consent application. The FCC granted administrative consent on February 28, 1995.

However, on December 28, 1994, and prior to the FCC's granting of consent, the Seller terminated the Agreement pursuant to the last sentence of section 11.1 of the Agreement. On March 24, 1995, the Buyer initiated an adversary proceeding requesting an order compelling specific performance by the Seller of its obligations under the Agreement. On May 12, 1995, the Seller moved for summary judgment. On June 6, 1995, the bankruptcy court granted the buyer's motion for summary judgment and dismissed the adversary proceeding. This appeal ensued.

### I.

■ The district court reviews the factual findings of the bankruptcy court for clear error and reviews the conclusions of law *de novo*. *In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir.1990); *Lowe's of Virginia, Inc. v. Thomas*, 60 B.R. 418, 419 (W.D.Va.1986).

■ Summary judgment is appropriate if there are no genuine issues of material fact from which the non-moving party could prevail. Fed.R.Civ. P. 56(c). The non-movant is entitled to all favorable inferences which can be drawn from the evidence. *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir.1967). Even where there is no dispute about the facts, there may exist disagreement between the parties on the inferences which may be reasonably drawn from those undisputed facts. *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979). Summary judgment should be granted only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts. *Id.*

■ In the instant case, the parties focus their arguments on the "no fault or action" language found in section 11.1 of the agreement. The Seller contends that section 11.1 provides that either party may terminate the Agreement provided that the delay in closing was not attributable to the terminating party's "fault" or "action." The Seller argues that the events surrounding the settlement of the EEOC claim do not constitute "fault" or "action" sufficient to render the termination option inoperative. The Seller considers the post-execution EEOC matter to be an "immaterial event" and argues that if an immaterial event is all that is required to prevent the Seller from exercising its termination rights under section 11.1, then the termination clause is rendered meaningless.

On the other hand, the Buyer argues that the termination clause in section 11.1 should be interpreted to mean that *any action* by the terminating party which delays the closing of the transaction should render the termination option inoperative. The Buyer contends that the clause does not require "default" or "negligent action" by either party; rather, it requires mere action. Thus, the Buyer claims that the activity surrounding the settlement of the EEOC claim was "action" by the Seller which attributed to the delay in closing because it attributed to the delay in the Buyer's filing with the FCC.

■ Where there is more than one permissible inference as to the intent to be drawn from the language of a provision, then the question of the actual intention of the parties is a triable issue of fact. *General Accident Fire & Life Assurance v. Akzona, Inc.*, 622 F.2d 90, 93 (4th Cir.1980). The court does not have to decide which of the interpretations is more reasonable. *Id.* Rather, if the court concludes that at least two of the interpretations are permissible, then this case presents a substantial issue of fact and should not be resolved on a motion for summary judgment. *Cram*, 375 F.2d at 673–74; *see also* 10A Charles Alan Wright *et al., Federal Practice & Procedure* § 2730.1, at 265–75 (2d ed. 1983). In the instant matter, the court finds that there exist at least two possible interpretations of the "no fault or action" language of section 11.1. The court believes that the level of conduct necessary to constitute "no fault or action" must fall somewhere between conduct constituting "any activity" and conduct constituting "de-

fault." Because the drafters of the Agreement knew how to specify "default" in other terminating provisions of the Agreement (specifically, sections 9.3 and 9.4), one could reasonably conclude that the level of conduct necessary to constitute "fault or action" in section 11.1 must be lower than the level of conduct necessary to constitute "default" in sections 9.3 and 9.4.

■ However, the court does not suggest that the level of conduct necessary to constitute "no fault or action" more appropriately approaches the level of conduct constituting "any activity." A universal rule of contract law in construing contractual language is that " 'an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless.' " *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 277 (4th Cir.1987) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed. Cir.1983)). The court shares the concern of the Seller that an interpretation of the "no fault or action" language as meaning "any activity" would effectively render the termination option meaningless.[2]

Thus, this court finds that it is not "perfectly clear that there is no dispute about . . . the inferences to be drawn from" the facts of this case. While the court believes that the bankruptcy judge was probably correct in his conclusions, the court also recognizes that where there is substantial ambiguity in the language used in a contract, then the intent of the parties who executed the contract is important. When that intent is disputed by the parties, then that dispute raises a genuine issue of material fact which cannot be determined upon a motion of summary judgment.

## II.

■ Of course, courts reviewing grants of summary judgment are permitted to affirm such grants on alternative grounds. *See Lowe v. Sporicidin Int'l,* 47 F.3d 124, 131 n. 6 (4th Cir.1995); *Dennison v. County of Frederick, Va.,* 921 F.2d 50, 53 (4th Cir.), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 998 (1990). In this case, however, the court must acknowledge that the facts are not sufficiently established in the present record to permit an affirmance of the grant of summary judgment on alternative grounds.

Section 9.4 provides that if consent of the FCC is not *final* within 270 days after the parties have filed, then either party, if not then in default, may terminate the Agreement. The court gleans from the record that only *administrative* consent was granted on February 28, 1995. This suggests the possibility that final consent was not granted within 270 days and that therefore the Seller may have an alternative ground for termination. However, the record does not indicate whether the administrative consent granted on February 28 became final at a later date, or whether protests (if any) have been decided or dismissed, or barred by the expiration of time.[3] Thus, at trial, the parties should present sufficient evidence to per-

---

**2.** One possible interpretation consistent with the argument that "no fault or action" means "any activity" is that the drafters could have intended to guard against *inaction* by the parties subsequent to the execution of the Agreement. This interpretation derives credence from the fact that the drafters used the disjunctive "or" in the clause. Under this interpretation, if either party (even the party opposing termination) took "action" that attributed to the non-occurrence of the Closing within 270 days, then neither party could exercise the termination option under section 11.1. Almost any action by either party could render the termination option inoperative. For instance, the settling of the EEOC complaint, the filings for the FCC consent order, or the assignment of the Buyer's rights to a newly-created entity would constitute "action" possibly contributing to a delay in Closing.

**3.** The parties have not submitted for the record evidence of the FCC's regulations concerning the time period for granting consent to an assignment of a license. The FCC has promulgated regulations providing that an application for voluntary assignment or transfer of control be filed with the FCC at least 45 days prior to the assignment or transfer. *See* 47 C.F.R. §§ 73.3540(b) & 73.354(e) (1995). Additionally, before a consent order becomes final, third parties (with an interest in the assignment) can file a petition to deny the application and such petition must be filed within 30 days of the public notice of acceptance by the FCC of the application. *Id.* § 73.3584(a). The applying party is given a 15–day period in which to reply to a third party petition. *Id.* § 73.3584(b); *see also* 47 C.F.R. § 1.405.

mit the bankruptcy judge to determine whether the Seller has alternative grounds for terminating the Agreement and thereby has an alternative defense against the Buyer's action for specific performance.

This court concludes that the grant of summary judgment may have been improper in this case, for the reasons stated. Accordingly, this court vacates the grant of summary judgment and remands the matter for trial.