**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM BISHOP,
<u>Plaintiff-Appellant,</u>

v.

CITY OF SUFFOLK; RICHARD HEDRICK,
Individually and as City Manager of
the City of Suffolk; LEON JOHNSON,
Individually and as Assistant City
Manager of the City of Suffolk;
THOMAS HINES, Individually and as

Director of Public Works for the
City of Suffolk; DONALD LONG,
Individually and as Assistant
Director of Public Works for the
City of Suffolk,
<u>Defendants-Appellees,</u>

and

ROGER LEONARD; JAMES BEAUCHAMP,
<u>Defendants.</u>

No. 95-2000

Appeal from the United States District Court
from the Eastern District of Virginia, at Norfolk.
Richard B. Kellam, Senior District Judge.
(CA-94-1027-2)

Argued: March 5, 1996

Decided: May 29, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey Kyle Yeats, FORBES & BROADWELL, Hampton, Virginia, for Appellant. Wendell Myron Waller, OFFICE OF THE CITY ATTORNEY, Suffolk, Virginia, for Appellees. **ON BRIEF:** C. Edward Roettger, Jr., Kay W. Rudiger, OFFICE OF THE CITY ATTORNEY, Suffolk, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The former manager of the Suffolk City Airport brought this action under 42 U.S.C. § 1983 against the City of Suffolk and several individuals, alleging that he was discharged for exercising protected speech and that he was denied access to the city's grievance procedure. The District Court granted summary judgment for the Defendants on the federal claims. Finding the discharge was not municipal policy and did not violate clearly established rights, we affirm.

I.

William Bishop was hired as Airport Manager for the City of Suffolk Municipal Airport in 1986. As part of his job he was responsible for ensuring the airport was in compliance with applicable safety regulations. On several occasions he confronted James Beauchamp and Roger Leonard, two of the five tenants at the airport, about alleged violations of federal and state laws including their conduct in painting and stripping paint.

2

Fire Marshall H.R. Parker inspected the airport several times in response to Bishop's complaints. In September 1991 he observed limited spray painting inside certain aircraft hangers and the absence of drip pans, both of which violated the fire code. A follow up inspection in June 1992 resulted in a memorandum detailing corrective action, but a third inspection did not reveal any violations. During one of the follow up inspections, Bishop also complained about a parachute class conducted in a hangar, but Parker concluded that the class did not present a safety concern. Parker never observed cars being painted or paint being stripped.

Building Official Wayne Whitehurst also inspected the hangars in response to Bishop's complaints. Although he found some evidence of spray painting inside the hangars, he considered the violations minor and issued verbal warnings.

On several occasions Bishop was reproached by his supervisors for his poor relationship with tenants. In a 1988 performance evaluation, Thomas G. Hines, the Director of Aviation Facilities, expressed concerns about Bishop's interaction with customers and tenants. In 1991 Hines wrote to Bishop about his inequitable handling of tenants, and in 1992 Hines placed Bishop on a 90-day probationary period for the same reason. Bishop was later suspended for three days without pay because he had discussed confidential city business with an outside agency, and the probationary period was extended an additional 60 days. Hines had to placate tenants when Bishop improperly attempted to charge for hangar space and refused to allow flammable materials in a properly marked area. One tenant threatened to terminate its lease because of Bishop's treatment. In a 1992 performance evaluation, then Assistant Director for Public Works Donald Long also stated that Bishop needed to improve his relations with tenants. Although Long noted improvement in the 1993 evaluation, a 1994 interim evaluation again commented that Bishop should improve his relationship with tenants and customers.

On February 28, 1994, Hines and Ladonna Wade, the Personnel Director, informed Bishop that he was to be discharged. One of the reasons cited for the discharge was the inequitable handling of airport tenants and customers. At that time Bishop alleges he asked whether the decision could be submitted to the city administrative grievance

3

process. Although Hines initially responded that the discharge was subject to the grievance procedure, Wade opined that it was not.

Bishop then filed suit against the City of Suffolk, City Manager Richard Hedrick, Assistant City Manager Leon Johnson, Long and Hines seeking damages under 42 U.S.C. § 1983 for discharge in retaliation of exercising his First Amendment right to free speech and for denying his due process right to participate in the administrative grievance procedure. He also asserted a state law claim against Beauchamp and Leonard. The district court granted summary judgment for Defendants on the constitutional claims and dismissed the state claims without prejudice. Bishop appeals the entry of summary judgment.

II.

We review the grant of summary judgment de novo , applying the same standards as the district court. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

To hold a municipality liable under 42 U.S.C. § 1983, it must be shown that the alleged injury stems from a policy, custom, or usage. Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). Whether a particular decision can be fairly deemed municipal policy turns on whether the person making the decision has authority to make policy, a determination made by reference to state law. See St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988). In this case the relevant law, passed by the City of Suffolk under authority delegated from the state, provides that the City Council or the City Manager establish the personnel policy for the airport. See Va. Code Ann. § 15.1-885; Suffolk City Code §§ 2-65(a), 2-65(c), 19-4. Hines, as Director of Aviation Facilities, had no authority to make employment policy and his actions cannot be attributed to the City of Suf-

4

folk. Therefore, summary judgment was properly granted to the City of Suffolk.

B.

To hold public officials liable under 42 U.S.C.§ 1983, it must be established that the alleged improper conduct violated clearly established federal rights which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold inquiry is whether, at the time the conduct occurred, the law was clearly established at a level of application to the specific conduct being challenged. DiMeglio v. Haines, 45 F.3d 790, 797, 803 (4th Cir. 1995).

The First Amendment protects the right of public employees to speak about matters of public concern.* Connick v. Myers, 461 U.S. 138, 146 (1983). If the speech falls into this category, then a balance is struck between the employee's interest in expression and "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Id. at 150.

_____

*It is important to correct the parties' construction of the first prong of this test. Much discussion was directed to whether Bishop reported the violations in his capacity as a public official or as a private citizen, relying on certain dicta in Connick and an alternative holding in DiMeglio. The likely source of confusion is the particular factual context of Connick, where the employee's exercise of speech related to a non-public matter concerning the internal function of assigning tasks in a district attorney's office and was made as a public official. That the court noted her speech was not made in her capacity as a"citizen" was shorthand for finding the subject matter of speech was public. A critical reading of Connick and the other progeny of Pickering reveals that the focus of the court has always been on whether the employee was speaking on a private matter or a public matter. See, e.g., Pickering v. Board of Education, 391 U.S. 563, 573-74 (1968); Perry v. Sindermann, 408 U.S. 593, 598 (1972); Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284 (1977); Rankin v. McPherson , 483 U.S. 378, 384 (1987); Waters v. Churchill, ___ U.S. ___, 114 S.Ct. 1878, 1884 (1994). See also Dwyer v. Smith, 867 F.2d 184, 193 (4th Cir. 1989); Piver v. Pender County Bd. of Educ., 835 F.2d 1076, 1078 (4th Cir. 1987), cert. denied, 487 U.S. 1206 (1988); Daniels v. Quinn, 801 F.2d 687, 689 (4th Cir. 1986).

5

Bishop's reports concerning tenants' compliance with various state and federal laws are unlike the purely personal interests that the Connick line of cases leaves unprotected. See Piver v. Pender County Bd. of Educ., 835 F.2d 1076, 1078-1080 (4th Cir. 1987), cert. denied, 487 U.S. 1206 (1988) (elaborating test for matters of public concern). At the time of discharge, Hines reasonably should have known that Bishop's expression concerned a public matter within First Amendment protection.

However, Bishop's interest in speaking on this public matter would have been weighed against Suffolk's interest in building and maintaining good relations with the tenants of the airport, protecting the revenues from leasing space, promoting harmony and cohesiveness within the airport management team. Admittedly, Bishop's interest, and indeed duty, in reporting violations of the law is stronger than the interest of the public official in DiMeglio, supra, who gave unsolicited legal advice to a citizens' group. But the record shows that the reported violations were investigated and found to be nonexistent or minor, requiring only verbal warnings, and after a series of similar reports Hines had concluded that Bishop was needlessly disrupting relations with the tenants. He attempted to focus Bishop on nonfrivolous violations of the law, but there is no indication he ordered Bishop to ignore all violations. Cf. Roper v. County of Chesterfield, Virginia, 807 F. Supp. 1221 (E.D. Va. 1992) (supervisor told building inspector to pass all the work done by certain contractors regardless of its quality). Hines' judgment that Bishop was needlessly disrupting relations with tenants and the operations of the airport is the kind of discretionary act for which public officials should not be liable, and was reasonable under the law then in effect. Accordingly, the individual Defendants were entitled to qualified immunity and summary judgment was proper.

C.

Bishop's due process claim is based on Hines' adoption of Wade's statement that the discharge was not subject to the grievance procedure. Although Bishop never attempted to avail himself of the available administrative grievance procedure for City of Suffolk employees, which is set forth in written form and is available to the public, he claims it would have been futile to submit a grievance to

6

Hines because Hines had "ruled" the procedure was not available. We do not find that Bishop's access to the administrative grievance procedure was denied or that he has shown that efforts would have been futile, and agree with the district court that there is no merit to this claim.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

7