**Eric MARTIN, Plaintiff**

v.

**Officer Anthony MENDOZA, Defendant**

**No. CIV.NO.AMD 02–403.**

United States District Court,
D. Maryland.

Nov. 12, 2002.

Jimmy A Bell, Tamiko Sherisse Shook, Law Office of Jimmy A Bell PC, Upper Marlboro, MD, for Plaintiff.

Gerard J. Stief, Transit Authority, Robert J. Kniaz, Washington Metropolitan Area Transit Authority, Washington, DC, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

Plaintiff Eric Martin ("Martin") was arrested and charged with disorderly conduct by defendant Anthony Mendoza ("Mendoza"), a law enforcement officer employed by the Washington Metropolitan Area Transit Authority ("the Authority"). Martin sued Mendoza in a six count complaint, seemingly alleging numerous federal law claims in a single count together with five related state law counts.[1] Discovery has concluded and now pending is the motion for summary judgment filed by Mendoza. No hearing is needed. For the reasons set forth below, the motion shall be granted as to the federal claims and the state law claims shall be dismissed without prejudice for lack of jurisdiction.[2]

## I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is enti-

tled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If "the evidence [is] so one-sided that one party must prevail as a matter of law," the court must grant summary judgment in that party's favor. *Id.* at 268, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991).

Mere speculation cannot stave off a properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). To survive a motion for summary judgment, a party may not rest on its pleadings, but must demonstrate that specific, material facts exist which give rise to a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court assumes that all of the non-moving party's evidence is worthy of belief, and all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita Elec. Industr. Co. v. Zenith*

---

1. Defendant Mendoza's employer, the Washington Metropolitan Area Transit Authority, was named as a defendant, but Martin voluntarily dismissed his claims against the Authority.

2. Undoubtedly, federal question jurisdiction exists over count one of the complaint, which alleges claims under 42 U.S.C. § 1983. Moreover, as the Authority is the creation of an interstate compact, federal question jurisdiction exists as to the (now dismissed) claims against the Authority. *See Lizzi v. Alexander*, 255 F.3d 128, 131–33 (4th Cir.2001). Martin's complaint also purported to invoke this court's diversity of citizenship jurisdiction un-

der 28 U.S.C. § 1332. In so doing, however, Martin (whose domicile is Maryland) has relied on the alleged fact that the principal place of business of the Authority is in the District of Columbia, and he has also assumed that the District of Columbia is the domicile of defendant Mendoza. In fact, in their answer to the complaint, the Authority and Mendoza specifically denied that they are citizens of the District of Columbia. Moreover, there is no evidence in the record that Mendoza is not a citizen of Maryland. Accordingly, in the absence of diversity of citizenship, I shall decline to exercise supplemental jurisdiction over the state law claims in this case.

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" can the court grant a motion for summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

Proper application of these principles to the record here requires that the federal claims be dismissed with prejudice.

## II.

The facts material to the federal constitutional claims in this case are not genuinely disputed. On August 16, 2001, Martin, who is African–American, was a 17–year–old honor student attending Suitland High School in Prince George's County, Maryland.[3] Martin worked at a summer job in Virginia. On that day, as was his routine, he traveled to and from work via the Washington Metro, the rapid rail system operated by the Authority.

A passenger using the Metro employs a paper "farecard" having a magnetic stripe on one side. The original value of a farecard is determined by the amount paid to purchase it. Subsequently, a farecard's value may fluctuate as its owner periodically inserts the farecard into the automatic gates at Metro stations to pay the required fare for a trip on a train (thereby drawing down its value), and, upon retrieval of the farecard after the automatic gate opens, by restoring value to the farecard using one of the machines made available in Metro stations for that purpose. As might be expected, the computerized system of farecard payment using automatic gates sometimes malfunctions, requiring reinsertion of the farecard into the gate, or insertion of the farecard into a different gate. If the farecard contains the exact amount of the required fare, the gate will retain the farecard and open to permit egress. On the other hand, if the farecard

has a value greater than, or lesser than, the required fare, it will be returned to the patron. In the event the value of the farecard is insufficient to cover the required fare, then the card will be returned to the patron, but the gate will not open to permit egress from the station.

On the evening in question, Martin arrived at his terminal destination on his way home from work, the Addison Road Metro station. When he inserted his farecard into the automatic gate, the gate failed on two attempts to read his farecard properly and thus did not permit Martin to pass through, returning the farecard to Martin. Martin moved to a neighboring gate and that gate successfully read his farecard and permitted him to pass through. Martin retrieved his farecard and was heading for the station exit. Martin's difficulty at the gates had been observed by defendant Mendoza, who was on routine patrol in the Addison Road Metro station, standing approximately 15 feet away. Specifically, Mendoza observed Martin pass through the gate on the third attempt as he walked in close proximity to the patron going through the gate immediately in front of Martin. Thus, because Martin's farecard had failed on two occasions, and because of Martin's propinquity to the passenger in front of him as they passed through the gate, Mendoza suspected that Martin might be a "fare evader"using the "piggyback" maneuver—one who scoots through the automatic gate on the heels of another passenger and without having the proper fare deducted from his own farecard.

Mendoza approached Martin and demanded that Martin hand over his farecard for examination. Martin handed the farecard to Mendoza. Mendoza then entered the nearby station manager's kiosk and ran the farecard through a reader.

---

**3.** Martin reached his majority prior to insti- tuting this case.

He quickly determined that the farecard was proper in every respect, and the information disclosed by the reader conformed to Martin's explanation of where he had commenced his trip. Mendoza promptly returned the farecard to Martin. Martin believed that he was unfairly confronted by Mendoza and repeatedly and loudly demanded to know why Mendoza had singled him out for investigation. The record is clear that both Martin and Mendoza raised their voices as their ensuing confrontation escalated. Martin admits that he was very upset and that Mendoza repeatedly admonished him to "calm down" because the matter was "not serious." At one point, Martin began to tap or knock on the glass enclosure of the station manager's kiosk in an apparent effort to get the permission of those inside to use the telephone so that he could call his mother. This disturbed Mendoza as there is no telephone available for public use in the kiosk.

Eventually, Mendoza instructed Martin to depart the station. Mendoza attests that Martin continued to yell and scream in a profane manner. Mendoza put his hands on Martin's arm (Martin says Mendoza "grabbed" him) in an effort to escort Martin from the station and Martin jerked away from Mendoza, swinging his arm and saying, "Don't touch me!" Apparently, Mendoza touched Martin in this fashion on two occasions. Soon, Mendoza determined to arrest Martin for disorderly conduct and announced his intention to do so. At about that time, Martin began to walk away from Mendoza toward a bank of pay telephones near the station exit, intending to call his mother "collect" to pick him up from the station. Mendoza followed Martin to the phone bank and, with the assistance of back-up officers, effected Martin's arrest. Martin did not resist arrest in any way and voluntarily complied with the officers' instructions.

Martin was transported to the police station and processed as a juvenile. He spent several hours in custody in a cell before he was released to his parents. Approximately a month after the incident, upon her review of the circumstances surrounding Martin's arrest and other, unspecified factors, the state juvenile justice intake officer determined not to authorize juvenile court action.[4] Mendoza acquiesced in that determination. According to the records of the Maryland Department of Juvenile Justice, Martin was "issued a reprimand and warned against future involvement in delinquent activities."[5] Indisputably, Martin suffered no physical injury in consequence of the events in suit.[6] Nor did he seek any psychological counseling or similar treatment as a result of the incident.

### III.

Martin's complaint contains six counts. In count one, the sole count invoking federal law, he asserts seemingly four discrete claims pursuant to 42 U.S.C. § 1983:(1) a Fourth Amendment unreasonable seizure claim based on his initial de-

---

**4.** The intake officer stated that her decision was based on an examination of Martin's "[h]ome, school, and community adjustment with parental concern and control ... [and][p]ast history with the police and court."

**5.** Mendoza argues that the issuance of the "reprimand" and warning constitutes an adjudication of the disorderly conduct charges that is sufficiently unfavorable to Martin to undermine entirely Martin's claims for false arrest and malicious prosecution. I need not determine this question.

**6.** On deposition, Martin described in the vaguest of terms an alleged "muscle soreness" or "joint soreness" allegedly arising from the fact that he was handcuffed with his hands behind his back.

tention; (2) a Fourth Amendment unreasonable seizure claim based on his arrest; (3) a Fourth Amendment excessive force claim; and (4) a Fourteenth Amendment Equal Protection Claim.[7]

Mendoza challenges the viability of the Fourth Amendment claims, *inter alia*, on the following grounds: (1) the detention and arrest of Martin did not violate any clearly established right of plaintiff secured by the Fourth Amendment; (2) even if Mendoza committed one or more errors of constitutional magnitude, nevertheless, he is entitled to the benefit of the qualified immunity defense long recognized under settled Supreme Court and Fourth Circuit precedent; and (3) there is no substantial evidence to establish that excessive force was employed. I am constrained to agree with Mendoza. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(explicating analytical paradigm in evaluating constitutional claims and the qualified immunity defense asserted in cases arising under § 1983); *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)(same); *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000)(same); *Anderson v. Russell,* 247 F.3d 125, 129 (4th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 342, 151 L.Ed.2d 258 (2001)(explicating Fourth Amendment standards); *Clem v. Corbeau,* 284 F.3d 543 (4th Cir.2002)(same); *Milstead v. Kibler,* 243 F.3d 157 (4th Cir.)(same), *cert. denied,* —— U.S. ——, 122 S.Ct. 199, 151 L.Ed.2d 141 (2001); *Amaechi v. West,* 237 F.3d 356 (4th Cir. 2001)(same; affirming denial of summary judgment sought on the ground of qualified immunity; genuine dispute of material fact present); *Henderson v. Simms,* 223

F.3d 267 (4th Cir.2000) (affirming grant of summary judgment on the ground of qualified immunity), *cert. denied,* 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 670 (2001); *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996)(applying qualified immunity to police officers charged with a Fourth Amendment excessive force violation), *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997); *see also id.,* 105 F.3d 174, 178 (4th Cir.1997)(explicating purpose of qualified immunity defense; collecting Supreme Court cases)(Wilkinson, Chief Judge, concurring in denial of rehearing en banc).

■ First, the record leaves no room for doubt that the initial detention of Martin was permissibly based on articulable suspicion that he had failed to pay the required fare. Specifically, Mendoza had articulable suspicion to detain Martin briefly and to examine his farecard based on Mendoza's first hand observations. Those observations revealed that the gates at the Addison Road Metro station experienced difficulty reading Martin's farecard, and that Martin seemed to "piggyback" through a second gate as he followed closely behind another passenger. *See Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("We have described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." (citation omitted)). The fact that Mendoza's suspicions were quickly dispelled does not vitiate the reasonableness of his suspicions in the first instance. To the contrary, the speedy resolution of the matter militates in favor of the conclusion that the detention was constitutionally rea-

---

7. Martin cites 42 U.S.C. §§ 1985, 1986, in addition to § 1983, but he makes no attempt to explain how those sections might be applicable here; I regard those ostensible claims as abandoned. In counts two through six, Martin asserts claims for battery, false arrest, false imprisonment, violation of the state constitution, and negligence. As mentioned in text, I decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

sonable. Accordingly, any claim based on the alleged unlawfulness of the initial detention fails as a matter of law.

 Second, as for the reasonableness of Mendoza's determination that there existed probable cause to believe that Martin was committing the offense of disorderly conduct, the issue is arguably a closer one.[8] Nevertheless, by his own admission, Martin (1) was highly offended by Mendoza's suspicions of him and reacted in such a loud and boisterous manner that Mendoza was required repeatedly to admonish him to "calm down" as they were in a public place and in the presence of other patrons; and (2) was slow, to say the least, in complying with Mendoza's lawful order that he depart the Addison Road Metro station after Mendoza reasonably concluded that he would not lower his voice or desist from his continued challenge to the propriety of the initial detention. These facts amply support the existence of probable cause to arrest for disorderly conduct.

 But even if it is assumed that the existence of probable cause to arrest for disorderly conduct is a "close call" on the present record, this is exactly the point of the qualified immunity defense. To deny Mendoza the benefit of the qualified immunity defense, I would have to be persuaded that *no* reasonably competent officer could have concluded that probable cause existed to believe Martin was committing the offense of disorderly conduct. On this record, even viewing the material facts in the light most favorable to Martin,

I am not persuaded that *no* reasonable law enforcement officer could have concluded (as did Mendoza) that probable cause existed. *See Wadkins v. Arnold,* 214 F.3d 535, 541 & n. 7 (4th Cir.)("Reasonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'") (citation omitted), *cert. denied,* 531 U.S. 993, 121 S.Ct. 485, 148 L.Ed.2d 458 (2000); *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992)("[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). *And see Torchinsky v. Siwinski,* 942 F.2d 257, 261 (4th Cir.1991)("The very idea of reasonableness requires that courts accord interpretive latitude to official judgments.").[9] Accordingly, Mendoza is entitled to qualified immunity as to the Fourth Amendment unreasonable seizure claim in respect to the arrest.

 Third, there is not a scintilla of evidence in the record to support an excessive force claim. Martin suffered no injuries in his encounter with Mendoza. Indeed, Martin has not even adduced any evidence of the force used against him (or of the character of the encounter in general) other than his own subjective assertions that he was "grabbed" and that he was "pushed against a wall" and that he experienced "muscle soreness." Manifestly, this is not sufficient. *See Martin v. Gentile,*

---

**8.** Under Maryland law, disorderly conduct is committed, *inter alia,* when a person willfully fails to obey a reasonable and lawful order of a law enforcement officer made to prevent a disturbance of the public peace. *See* Md. Code Ann., Art. 27, § 121(b)(3).

**9.** Judge Schwartz recently put the matter succinctly:

> If an officer arrests the plaintiff without probable cause, the officer is immune from

suit if he can show either that: (i) it was objectively reasonable for him to believe he had probable cause; or (ii) officers of reasonable competence could disagree whether probable cause existed.

*Sulkowska v. New York,* 129 F.Supp.2d 274, 293 (S.D.N.Y.2001) (citations omitted). Here, officers of reasonable competence could surely disagree as to whether there was probable cause.

849 F.2d 863, 869 (4th Cir.1988) ("The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody."); *Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994)(en banc)(noting requirement of more than de minimis injury for cognizable excessive force claim under Eighth Amendment); *see also Carter v. Morris,* 164 F.3d 215, 219 n. 3 (4th Cir.1999) (noting that plaintiff's claim that her handcuffs were too tight was so insubstantial as to fail to support her Fourth Amendment claim). Moreover, to the extent that Martin contends that whenever a law enforcement officer *touches* a person who is not under arrest the amount of force is thereby per se "excessive," there is no support for such a contention. "Not every push or shove' " is excessive, *see Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)), and even assuming such touching constitutes a technical battery under state law, which is doubtful in the extreme, it is well-settled that "not every violation of state law [rises to the level of a constitutional violation]." *See Robles v. Prince George's County,* 308 F.3d 437, 2002 WL 31422842 (4th Cir. October 29, 2002)(Wilkinson, Chief Judge, concurring the denial of rehearing en banc). Accordingly, Mendoza is entitled to judgment as a matter of law as to any Fourth Amendment excessive force claim.

■ Finally, Martin argues that he was selected for investigation because he is African–American and that therefore his detention and ultimate arrest violated the Equal Protection Clause of the Fourteenth Amendment. Apart from Martin's own subjective belief, however, there is no evidence whatsoever in the record to support this claim. Moreover, as mentioned above, Mendoza plainly had articulable suspicion to examine Martin's farecard; there is no support for the conclusion that Mendoza acted in a wholly arbitrary manner. Mendoza specifically affirms that Martin's race played no role whatsoever in their interactions. Accordingly, Mendoza is entitled to judgment as a matter of law as to Martin's Equal Protection claim.

## IV.

For the reasons set forth, defendant Mendoza is entitled to judgment as a matter of law as to the federal claims. It is the general rule in this circuit that once federal claims have been finally resolved on pre-trial motion, the exercise of jurisdiction over supplemental state law claims should be declined. *See* 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Taylor v. Waters,* 81 F.3d 429, 437 (4th Cir.1996); *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir.1995). I shall, therefore, dismiss the state law claims without prejudice. An order follows.

## ORDER

In accordance with the foregoing Memorandum, it is this 12th day of November, 2002, by the United States District Court for the District of Maryland,

(1) ORDERED that the motion for summary judgment filed by defendant BE, and it hereby is GRANTED and ALL FEDERAL CLAIMS ALLEGED IN COUNT ONE OR OTHERWISE ARE DISMISSED WITH PREJUDICE; and it is further

(2) ORDERED that ALL STATE LAW CLAIMS ARE DISMISSED WITHOUT PREJUDICE; and it is further

(3) ORDERED that the Clerk of the Court CLOSE THIS CASE and TRANS-

MIT copies of this Order and the foregoing Memorandum to counsel of record.