**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2317**

SCOTT A. STICKLEY,

        Plaintiff - Appellant,

     v.

TIM SUTHERLY, Individually, and in his official capacity as
Chief of Police, Town of Strasburg; KEVIN FAUBER,
Individually, and in his official capacity as Town Manager,
Town of Strasburg; TOWN OF STRASBURG, VIRGINIA,

        Defendants - Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Samuel G. Wilson,
District Judge. (5:09-cv-00004-sgw)

Argued: December 8, 2010        Decided: March 14, 2011

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and David A.
FABER, Senior United States District Judge for the Southern
District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.   Senior Judge Faber wrote the
opinion, in which Chief Judge Traxler and Judge Wynn joined.

Annette Kay Rubin, Leesburg, Virginia, for Appellant.   Rosalie
Fessier, TIMBERLAKE, SMITH, THOMAS & MOSES, PC, Staunton,
Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

FABER, Senior District Judge:

The parties in this case ask us to decide whether the district court (a) correctly granted defendants Tim Sutherly and Kevin Fauber qualified immunity for an alleged violation of appellant Scott Stickley's First Amendment rights and (b) whether the district court correctly held that the Town of Strasburg incurred no municipal liability as a consequence of Sutherly and Fauber's actions. We agree with the district court's holdings on both qualified immunity and municipal liability, and accordingly affirm the district court's grant of summary judgment in defendants' favor.

## I. Factual and Procedural Background

Appellant Scott Stickley joined the Strasburg, Virginia Police Department ("SPD") in 1996. Stickley received a number of promotions during his years with the SPD and earned high marks on his assessments. In 2006 Stickley applied to be the Chief of Police, but was not selected. Instead, the town chose Tim Sutherly as the new Chief in February 2007.

During the spring of 2007, Sutherly allegedly made comments to people in the community indicating his intention to dismiss Stickley from the SPD. On July 10, 2007, Sutherly placed Stickley on administrative leave, suspended Stickley's police powers incident to a disciplinary action, and assigned him to

2

the position of School Resource Officer.  Stickley alleges that he received comments from residents stating that Sutherly intended to further retaliate against Stickley in the future. Toward the beginning of August 2007, Stickley's situation began to receive attention in the local press.  The Northern Virginia Daily published a front-page article on police officer discipline in Strasburg, and a letter to the editor followed the article, calling for a community-wide discussion of the SPD disciplinary actions.  On May 29, 2008, without any apparent new developments, Sutherly demoted Stickley to the position of a Patrol Officer, reassigned Stickley's duties as primary firearms instructor to another officer, and forbade Stickley from filing a grievance about the demotion and reassignment.

Shortly thereafter, Carl Rinker, a Town Council Member approached Stickley and asked him about his demotion.  The two allegedly had a casual conversation, after which Rinker called Sutherly to discuss Stickley's demotion.  Following Sutherly's conversation with Rinker, Sutherly placed Stickley on administrative leave while the SPD investigated whether Stickley had violated SPD regulations by going outside the chain of command in talking to Rinker.  In response, Stickley sent Sutherly a grievance notice on June 11, 2008, alleging a violation of Stickley's First Amendment rights, among others. The next day, Stickley went before a Board of Inquiry, convened

3

at Sutherly's behest, accused of insubordination. On June 20, 2008, Sutherly advised Stickley that his employment would be terminated because the Board of Inquiry had found that Stickley had committed two Category III infractions of the SPD regulations. Specifically, Sutherly and Kevin Fauber, the Strasburg Town Manager, dismissed Stickley for having taken "action which [would impair] the efficiency or reputation of the department, its members, or employees" and had committed "insubordination or serious breach of discipline." Brief of Appellant, p. 14. At oral argument, counsel for Stickley conceded that Stickley did not follow the prescribed grievance procedure in voicing his objections to his demotion. The Board of Inquiry did not address Stickley's alleged First Amendment violations.

On February 4, 2009, Stickley filed a 42 U.S.C. § 1983 suit in the United States District Court for the Western District of Virginia alleging a violation of his First Amendment rights with respect to his conversation with Carl Rinker and subsequent dismissal from the SPD. The district court granted summary judgment in favor of defendants and this appeal ensued.

We review de novo a district court's grant of summary judgment and view the facts in the light most favorable to the nonmoving party. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997).

4

## II. Analysis

### A. Qualified immunity for Sutherly and Fauber

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person could have known." Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007) (internal quotations omitted). Qualified immunity protects a defendant regardless of whether the government official's error is "one of fact or one of law." Butz v. Economou, 438 U.S. 478, 507 (1978).

In determining whether a defendant is entitled to qualified immunity, a court need not first determine whether the defendant actually violated the plaintiff's statutory or constitutional rights. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). Instead, the court may first determine whether the right in question was "clearly established" at the time of the alleged violation, and if it was not, the court need go no further. Id. at 816. The court's holding in Pearson thus makes optional what had previously been mandatory under Saucier v. Katz, 533 U.S. 194 (2001); namely, that the court first determine whether a violation of a plaintiff's right had in fact occurred and only then consider whether that right was "clearly established." Id. at 818. The Supreme Court noted that while the Saucier sequence

5

"is often appropriate," the courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. Having heard the parties' arguments and reviewed the record, we believe it appropriate to forego making a determination of whether defendants actually violated Stickley's First Amendment rights. Instead, we consider only whether Stickley's right to comment on his demotion within the Strasburg Police Department was clearly established at the time defendants dismissed him from the force.

"A right is clearly established if the contours of the right are sufficiently clear so that a reasonable officer would have understood . . . that his behavior violated the right." Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir. 2007). The law does not expect the defendant "to sort out conflicting decisions or to resolve subtle or open issues." Id. at 271. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). We now turn to a brief discussion of the law in this area to ascertain whether in fact Stickley's asserted right to speak was "clearly established."

6

While public employees do not lose their right to speech by virtue of working for a governmental entity, neither are they free to speak on all variety of matters. Instead, the law has struck a compromise and protects public employee speech only in certain circumstances. Whether the First Amendment protects an employee's right to speak must be analyzed under a two-part test.

First, the court must determine whether the employee's speech is "on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). Speech which is on a matter of public concern must relate to some "matter of political, social, or other concern to the community. . . ." Id. The inquiry centers on whether "the public or the community is likely to be truly concerned with or interested in the particular expression." Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004). Where the employee's speech is more about a matter of personal interest, however, the First Amendment offers no protection. Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992). As the Stroman court explained, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are

7

matters more immediately concerned with the self-interest of the speaker as employee." Id. (citing Connick, 461 U.S. at 147).

Second, and only if the speech relates to a matter of public concern, the court must determine whether the employer was justified in discharging the employee. To do this, the court must balance the public employee's interest in speech with "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150. The employer need not "prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was 'reasonably to be apprehended.'" Maciariello, 973 F.2d at 300 (quoting Jurgensen v. Fairfax Cnty., 745 F.2d 868, 879 (4th Cir. 1984)). This interest is viewed as if on a spectrum "from university professors at one end to policemen at the other." Id. Police officers are considered to be "at the restricted end of the spectrum because they are 'paramilitary' -- discipline is demanded, and freedom must be correspondingly denied." Id; see also Jurgensen, 745 F.2d at 879; Kelley v. Johnson, 425 U.S. 238 (1976) (police department's interest in discipline, esprit de corps, and uniformity were sufficient state interests to defeat a due process challenge to hair grooming regulations). "Consequently, greater latitude is afforded to police department officials in

8

dealing with dissension in their ranks." Maciariello, 973 F.2d at 300.

Having reviewed the substantive law governing employee speech, we are persuaded that the law in this area is not "clearly established" such that a reasonable person would have known what the law necessarily required in many cases. We reach this conclusion because the language of the Connick test itself and the nuanced and careful approach the test requires lead to the conclusion that an employee's right to speech in any particular situation will often not be immediately evident. The first prong of the test requires a determination of whether the employee's speech is on a "matter of public concern." This is a highly fact-intensive inquiry, which may be influenced by any variety of factors. Moreover, the line marking when something becomes a matter of public concern is blurry, and thus the boundary confining a public official's behavior is hard to discern. The second prong of the test may be even more problematic because it requires a balancing of the employee's and the employer's competing interests. This not only requires a keen understanding of the respective interests of each party, but also necessitates a conclusion as to which interests are more substantial. This conclusion, in turn, becomes an inherently subjective task, and it is the subjective nature of the inquiry – especially when an official must undertake it ex

9

ante – that makes the inquiry problematic from a qualified immunity standpoint. As we have stated before, "where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, 'only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected.'" McVey v. Stacey, 157 F.3d 271, 277 (4th Cir. 1998) (quoting DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995).

Our finding of qualified immunity in this case is not meant to suggest that an employee can never show that the employer violated his or her right to speech. In a factual situation, for example, where it is abundantly clear that the employee is speaking on a matter of public concern and the employer can show no demonstrable interest in silencing the employee, the Connick test becomes far less problematic and points the employer in one distinct direction: to allow the speech. This would exemplify an outlier case, where the employer properly incurs liability because a reasonable person would have immediately realized that the employer was violating the employee's right by silencing the employee. It is in such cases, ones in which the violation is so clear, that qualified immunity does not protect the defendant. However, such is not the type of factual situation we are faced with here. Stickley's comments touch on issues of

10

both personal and potentially public interest, while the Chief of Police undeniably had an important interest in maintaining unity among his officer corps. As such, the instant case calls for a subtle and careful analysis under Connick. It is the requirement of this subtle and careful analysis to determine whether the speech was of private or public concern, and whose interest was paramount, that leads us to conclude that Stickley's right to speak was not clearly established, and that therefore defendants were indeed entitled to qualified immunity.

## B. Municipal Liability

A plaintiff suing a municipal entity under 42 U.S.C. § 1983 must show that his or her injury was caused by municipal policy or custom. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). A municipality cannot be held liable under § 1983 solely because it employed a tortfeasor. Id. at 691. "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). To hold a municipality liable, the decisionmaker must possess "'final authority to establish municipal policy with respect to the action ordered.'" Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (quoting Pembaur, 475 U.S. at 481)).

11

Stickley has failed to show that either Sutherly or Fauber possessed the final authority required to establish municipal liability. Defendants bring to the court's attention the fact that the Town of Strasburg retains the final decisionmaking authority with respect to the Chief of Police's actions. The Town Code provides that the Chief of Police "shall always be subject to the orders and regulations of the town manager, and under the control of the town manager." Brief for Appellees, pp. 26-7. Plaintiff uses language from the SPD manual to argue that Sutherly had "final authority in all matters of policy operations and discipline." Brief for Appellees, p. 28. As defendants point out, however, the Town Council never ratified the manual. Additionally, the fact that Sutherly had Stickley come before a Board of Inquiry to decide the question of Stickley's alleged insubordination only strengthens defendants' contention that Sutherly did not reserve to himself final decisionmaking authority with respect to employee discipline and termination issues.

## III. Conclusion

Accordingly, the district court's grant of summary judgment in favor of defendants on the issues of qualified immunity and municipal liability is

AFFIRMED.

12