NIEMEYER, Circuit Judge,
dissenting:
I would grant qualified immunity to Police Chief Robert Cook and Town Manager Christine Bralley because it was not clearly established at the time that Chief Cook fired the plaintiff-officers that the officers had complained to the North Carolina Governor’s Office as citizens, rather than as employees. If the officers had complained as employees, “the Constitution does not insulate their communications from employer discipline.” Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).
In December 2011, Police Officers Kenneth L. Hunter, Rick A. Donathan, and Jerry D. Medlin of the Mocksville Police Department in Mocksville, North Carolina, used a disposable telephone to call the Governor’s Office to anonymously report perceived corruption and misconduct within the Police Department, including corruption by Chief Cook, and to request that an investigation be initiated. Two weeks later, after Chief Cook allegedly learned of the call and consulted with Town Manager Bralley, he terminated the three officers’ employment.
The officers commenced this action under 42 U.S.C. § 1983 against' Chief Cook, Town Manager Bralley, and the Town of Mocksville, alleging that the defendants violated their First Amendment rights by terminating their employment in retaliation for their exercise of free speech rights in calling the Governor’s Office. They sought compensatory and punitive damages, reinstatement, and injunctive relief against future violations of their rights.
On the defendants’ motion for summary judgment, the district court denied Chief Cook and Town Manager Bralley’s claim of qualified immunity and granted judgment to the Town of Mocksville, concluding that the officers failed to state a claim for municipal liability. Chief Cook and Town Manager Bralley filed this interlocutory appeal, challenging the district court’s denial of their qualified immunity, and the officers cross-appealed the dismissal of their municipal liability claim.
The majority affirms the qualified immunity ruling, concluding that the officers’ complaint to the Governor’s Office about departmental misconduct was protected by the First Amendment because it was clearly established that the officers were not simply carrying on their “daily professional activities” but rather were speaking as citizens on a matter of public concern. But in reaching this conclusion, the majority fails to identify any controlling precedent that would have informed Chief Cook and Town Manager Bralley that they were acting unlawfully in firing the officers for going over their heads to the Governor’s *404 Office to complain about departmental misconduct. The question of whether police officers speak as employees or as citizens when complaining to the Governor’s Office about departmental corruption and misconduct was undecided in this circuit — and has remained so before today — and the proper application of relevant principles is murky at best. Therefore, the relevant case law was not clearly established at the time of the defendants’ conduct. In such circumstances, Chief Cook and Town Manager Bralley are entitled to qualified immunity, which shields government officials from suits for damages when acting in their personal capacity unless (1) they violate a statutory or constitutional right (2) that was “clearly established at the time of the challenged conduct.” Lane v. Franks, — U.S. -, 134 S.Ct. 2369, 2381, 189 L.Ed.2d 312 (2014) (quoting Ashcroft v. alKidd, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)) (internal quotation marks omitted). Accordingly, I would reverse and remand with instructions to grant Chief Cook and Town Manager Bral-ley qualified immunity.*
In considering whether a right was clearly established at the time of the challenged conduct, courts are guided by three principles. First, “as long as [an official’s] actions could reasonably have been thought consistent with the rights [he is] alleged to have violated,” he is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Second, while an official may be denied qualified immunity without “the very action in question ha[ving] previously been held unlawful,” id. at 640, 107 S.Ct. 3034, “existing precedent must have placed the statutory or constitutional question beyond debate,” al-Kidd, 131 S.Ct. at 2083 (emphasis added). Third, existing precedent is limited to “the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose.” Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999) (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (en banc)).
The test for evaluating a First Amendment retaliation claim is well-established and inquires:
(1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee’s interest in speaking upon the matter of public concern outweighed the government’s interest in providing effective and efficient services to the public; and (3) whether the employee’s speech was a substantial factor in the employee’s termination decision.
McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir.1998). In Garcetti the Supreme Court refined the test, making clear that “when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.” 547 U.S. at 421, 126 S.Ct. 1951 (emphasis added). Thus, in the wake of Garcetti the inquiry whether an employee was speaking as a citizen is logically independent from the inquiry whether the employee was speaking on a matter of public concern. See Lane, 134 S.Ct. at 2378-81 (determining first that the employee’s speech was “speech as a citizen,” id. at 2378, before *405 turning to whether his speech was “speech on a matter of public concern,” id. at 2380).
Chief Cook and Town Manager Bralley concede that the law was clearly established by December 2011 that the officers, when complaining about criminal misconduct in their department, were speaking on a matter of public concern and that their interest in so speaking outweighed the Police Department’s interest in providing effective and efficient services to the public. They contend, however, that the officers’ “duties and obligations as law enforcement officers included the reporting and investigation of misconduct,” and therefore that the officers “were speaking as employees rather than citizens” when they complained to the Governor’s Office about such misconduct in the Police Department. Recognizing the officers’ argument to the contrary, Chief Cook and Town Manager Bralley maintain that, “[a]t a minimum,” the state of the law in this circuit was unsettled as to whether officers, complaining as these officers did, speak as employees or as citizens.
I agree with the defendants that, as of December 2011, the law was not clearly established — nor, indeed, has it been at any time before now — that a police officer complaining to the Governor’s Office of departmental corruption involving his police chief speaks as a citizen. Given the lack of relevant authority, it was entirely reasonable for Chief Cook and Town Manager Bralley to have concluded that the officers were complaining as employees in the course of their official duties when making their complaints.
In deciding otherwise, the majority relies on two decisions—Andrew v. Clark, 561 F.3d 261 (4th Cir.2009), and Durham v. Jones, 737 F.3d 291 (4th Cir.2013). But those cases only go so far as to conclude unremarkably that exposing corruption within a police department is a matter of public concern — a proposition with which Chief Cook and Town Manager Bralley agree. Neither case addresses the independent inquiry of whether the officers were speaking as citizens when reporting departmental corruption for investigation.
In Andrew, a police officer alleged that his First Amendment rights were violated when he was fired for leaking to the press an internal memorandum that he had written regarding whether the police department properly handled an investigation of an officer-involved shooting. Andrew, 561 F.3d at 263. In an apparent effort to insulate his claim from the argument that he spoke as an employee, Andrew alleged in his complaint (1) that he “was not under a duty to write the memorandum as part of his official responsibilities”; (2) that “[h]e had not previously written similar memoranda after other officer-involved shootings”; (3) that he “would not have been derelict in his duties ..., nor would he have suffered any employment consequences, had he not written the memorandum”; (4) that the police commissioner characterized the memorandum as “unauthorized” and ignored it; and (5) that he was not responsible for investigating officer-involved shootings and did not work with or have control over the units that bore that responsibility. Id. at 264. The defendants replied that because Andrew was the district commander, he was required to write reports for all shootings within his district. Id. at 266-67 & n. 1. In reversing the district court’s grant of qualified immunity, we concluded that “the question whether the Andrew Memorandum was written as part of his official duties was a disputed issue of material fact that [could not] be decided on a motion to dismiss pursuant to Rule 12(b)(6).” Id. at 267 (emphasis added); see also id. (“At this stage of the proceedings in this matter, we must conclude that there is ‘room *406 for serious debate’ regarding whether Andrew had an official responsibility to submit a memorandum ... ”). Thus, in the context of that factual dispute, Andrew provides no guidance regarding when a police officer speaks as a citizen rather than as an employee.
Durham is no different. There, we affirmed the district court’s denial of qualified immunity to a sheriff who fired his deputy for sending a packet of materials describing corruption within the sheriffs office to the media and various state officials. Durham, 737 F.3d at 294. In doing so, we focused on whether the deputy sheriff spoke on a matter of public concern and on whether his interest in speaking outweighed his employer’s interest in maintaining an effective work environment. Id. at 298-304. We said nothing about whether the deputy sheriff had been speaking as a citizen, an issue that the sheriff never raised in his brief. See Br. of Appellant, Durham, 737 F.3d 291 (No. 12-2303), 2013 WL 551533 (arguing exclusively that the materials did not pertain to a matter of public concern and that the interest of the sheriffs office in maintaining an efficient and effective law enforcement agency outweighed any interest that the deputy sheriff claimed in disseminating the materials).
Not only did Andrew and Durham not address whether police officers speak as citizens when reporting corruption to a state agency, but the facts of those cases also render them decidedly distinguishable from the case before us. Whereas the terminated officers in those cases had leaked information to members of the media, either exclusively (Andrew) or in tandem with a distribution to a broad spectrum of public officials (Durham), the terminated officers in this case reported the corruption exclusively to a single governmental agency that could ■ have been thought to have supervisory or investigatory responsibility over the Police Chief and the Town Manager. In light of this factual distinction, it can hardly be said that existing precedent “placed the ... constitutional, question beyond debate,” alr-Kidd, 131 S.Ct. at 2083 (emphasis added).
The majority maintains that it would be “perverse” to hold that employee speech regarding serious governmental misconduct is protected when made publicly but not when made to the Governor’s Office. Ante, at 402 (quoting Garcett% 547 U.S. at 427, 126 S.Ct. 1951 (Stevens, J., dissenting)) (internal quotation marks omitted). Maybe so, but that is not the proper inquiry. Rather, the question is whether Durham and Andrew made it such that a reasonable official would have understood that the individual .defendants’ conduct violated the plaintiffs’ First Amendment rights. See Owens v. Balt. City State’s Attorney’s Office, 767 F.3d 379, 398 (4th Cir.2014), cert. denied, — U.S.-, 135 S.Ct. 1893, 191 L.Ed.2d 762 (2015). To the extent that our prior case law suggested that a law-enforcement officer speaks as a citizen when reporting corruption and misconduct to the media for publication, it would not necessarily have been apparent to a reasonable official that such an officer speaks as a citizen when making such a report to a governmental agency for investigation.
“Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.” Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992). Here; not only was there no authority in this circuit holding that the defendants’ conduct was unlawful, but also there was no precedent regarding when a police officer speaks as a citizen rather than as an employee. Thus, Chief Cook and Town Manager Bralley were left to speculate *407 about and guess whether terminating the employment of Officers Hunter, Donathan, and Medlin would violate their First Amendment rights. Because those public officials are not liable for incorrect guesses, I would grant them qualified immunity and reverse the district court’s ruling denying that immunity.

 I agree with the majority that we do not have subject matter jurisdiction to address the officers’ cross-appeal of the dismissal of their municipal liability claim for failure to demonstrate that either Chief Cook or Town Manager Bralley was the final policymaker for the Town.